**Brian Orlando WILLIAMSON,
Petitioner,**

v.

**Fred RANEY, Respondent.**

No. 01–2074–D/A.

United States District Court,
W.D. Tennessee,
Western Division.

July 31, 2001.

---

Brian Orlandus Williamson, Northwest Correction Center, Tiptonville, TN, pro se.

**ORDER DIRECTING PETITIONER TO FILE *IN FORMA PAUPERIS* AFFIDAVIT OR PAY THE FILING FEE ORDER OF DISMISSAL ORDER DENYING CERTIFICATE OF APPEALABILITY AND ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**

DONALD, District Judge.

Petitioner, Brian Orlando Williamson, Tennessee Department of Corrections ("TDOC") inmate number 239726, an in-

mate at the Northwest Correctional Complex in Tiptonville, Tennessee, filed a petition under 28 U.S.C. § 2254 on January 30, 2001. Petitioner did not pay the $5 filing fee, and he did not file an application to proceed *in forma pauperis*. It is therefore ORDERED that, within ten (10) days of the entry of this order, Petitioner is directed to either pay the filing fee or submit an application to proceed *in forma pauperis*. The Clerk is directed to send a copy of the appropriate affidavit to Petitioner along with this order. Failure to comply with this order may result in the imposition of monetary or other sanctions despite the immediate dismissal of this case.

The Clerk of Court shall docket the case and record the respondent as Fred Raney.

## A. STATE COURT PROCEDURAL HISTORY

On January 15, 1997, pursuant to a negotiated plea agreement, Petitioner entered guilty pleas in the Shelby County Criminal Court for thirteen offenses[1] resulting in an effective sentence of twenty years. Petitioner did not take a direct appeal.

Petitioner filed a pro se petition pursuant to the Tennessee Post–Conviction Procedure Act, Tenn.Code Ann. §§ 40–30–201 to –222, in the Shelby County Criminal Court on January 16, 1998[2] alleging that his guilty pleas were involuntarily entered and that he received ineffective assistance of counsel. Counsel was appointed to represent Petitioner and an amended petition was filed in March of 1998. An evidentiary hearing was held on July 23, 1998. The post-conviction court dismissed the petition in an Order dated September 4, 1998, and the Tennessee Court of Criminal Appeals affirmed. *Williamson v. State*, No. 02C01–9810–CR–00305, 1999 WL 1095719 (Tenn.Crim.App. Oct.31, 1999), *perm. app. denied* (Tenn. Apr. 24, 2000).

## B. PETITIONER'S FEDERAL HABEAS CLAIMS

In this petition, Williamson raises three issues, to wit: (i) that his convictions were obtained by pleas of guilty which were unlawfully induced or not made voluntarily with an understanding of the nature of the charges and the consequences of the pleas; (ii) that his convictions were obtained by actions of a grand or petit jury which was unconstitutionally selected and impaneled; and (iii) denial of effective assistance of counsel.

## C. ANALYSIS OF THE MERITS

### I. Legal Standards Applicable to Habeas Petitions

#### A. Waiver and Procedural Default

Twenty-eight U.S.C. § 2254(b) states, in pertinent part:

(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a

---

**1.** The offenses to which Petitioner entered a guilty plea included driving while a habitual motor vehicle offender, two counts of possession of a controlled substance with intent to sell, four counts of selling a controlled substance, two counts of possession of marijuana, possession of a controlled substance with intent to deliver, and leaving the scene of an accident. *See generally Williamson v. State*, No. 02C01–9810–CR–00305, 1999 WL

1095719, at *1 n. 1 (Tenn.Crim.App. Oct.31, 1999) (enumerating Petitioner's offenses).

**2.** The Post–Conviction Procedure Act contains a one-year statute of limitations. Tenn.Code Ann. § 40–30–202. In this case, the post-conviction petition was deemed timely because it was mailed on January 8, 1998. *Williamson v. State*, No. 02C01–9810–CR–00305, 1999 WL 1095719, at *1 n. 2 (Tenn.Crim.App. Oct.31, 1999).

State court shall not be granted unless it appears that-

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254. *E.g., Granberry v. Greer,* 481 U.S. 129, 133–34, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Rose v. Lundy,* 455 U.S. 509, 519, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure. 28 U.S.C. § 2254(c); *Preiser v. Rodriguez,* 411 U.S. 475, 477, 489–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

■ To exhaust these state remedies, the petitioner must have presented the very issue on which he seeks relief from the federal courts to the courts of the state that he claims is wrongfully confining him. *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray v. Netherland,* 518 U.S. 152, 162–63, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). " '[T]he substance of a federal habeas corpus claim must first be presented to the state courts.' " *Id.* at 163, 116 S.Ct.

2074 (quoting *Picard,* 404 U.S. at 278, 92 S.Ct. 509). A habeas petitioner does not satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief." *Id.*

■ Conversely, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* When a petitioner raises different factual issues under the same legal theory he is required to present each factual claim to the highest state court in order to exhaust his state remedies. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (holding that exhaustion requirement mandates presentation of all claims to state court through discretionary review process); *see also Pillette v. Foltz,* 824 F.2d 494, 497–98 (6th Cir.1987). He has not exhausted his state remedies if he has merely presented a particular legal theory to the courts without presenting each factual claim. *Pillette,* 824 F.2d at 497–98. The claims must be presented to the state courts as a matter of federal law. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *see also Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

■ Moreover, the state court decision must rest primarily on federal law. *Coleman v. Thompson,* 501 U.S. 722, 734–35, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). If the state court decides a claim on an

independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by this procedural default from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 87–88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, the state-court decision need not explicitly address the federal claims; instead, it is enough that the petitioner's brief squarely presents the issue. *Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (per curiam).

■ When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits the state court from extending further consideration to them, the claims are deemed exhausted, but procedurally barred. *Coleman*, 501 U.S. at 752–53, 111 S.Ct. 2546; *Teague v. Lane*, 489 U.S. 288, 297–99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Wainwright v. Sykes*, 433 U.S. at 87–88, 97 S.Ct. 2497; *Rust*, 17 F.3d at 160.

■ A petitioner confronted with either variety of procedural default must show cause and prejudice for the default in order to obtain federal court review of his claim. *Teague*, 489 U.S. at 297–99, 109 S.Ct. 1060; *Wainwright v. Sykes*, 433 U.S. at 87–88, 97 S.Ct. 2497. Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. *Coleman*, 501 U.S. at 752–53, 111 S.Ct. 2546; *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating

"that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. The petitioner must show that " 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *Murray*, 477 U.S. at 496, 106 S.Ct. 2639). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.*

Tennessee's post-conviction statute specifies types of procedural default that may bar the state court from reviewing the merits of a constitutional claim. The conduct of Petitioner's post-conviction proceedings was governed by Tennessee's Post–Conviction Procedure Act, Tenn. Code Ann. §§ 40–30–201 to –222. A one-year statute of limitations governed the filing of petitions under that statute. *Id.* at § 40–30–202. The statute also enunciated a standard by which state courts were to determine whether to consider the merits of post-conviction claims:

> Upon receipt of a petition in proper form, or upon receipt of an amended petition, the court shall examine the allegations of fact in the petition. If the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the petition shall be dismissed. The order of dismissal shall set forth the court's conclusions of law.

*Id.* at § 40–30–206(f).[3]

The Sixth Circuit has upheld the dismissal of a Tennessee prisoner's habeas

---

3. Tenn.Code Ann. § 40–30–206 continued:
 (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
 (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either

petition as barred by a procedural default caused by failing to file within the Tennessee statute of limitations on post-conviction relief. *Hannah v. Conley,* 49 F.3d 1193, 1194–95 (6th Cir.1995) (construing first statute and stating "the language of Tenn. Code Ann. § 40–30–102 is mandatory"). In this case, Petitioner's right to file any further state post-conviction petition is barred by the one-year statute of limitations.

**B. *Legal Standard for Merits Review***

The standard for reviewing Petitioner's constitutional claims on the merits is enunciated in 28 U.S.C. § 2254(d). That section provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, this Court must determine whether the state court adjudications of those claims asserted by Petitioner that were decided on the merits on direct appeal, in Petitioner's post-conviction proceeding, or

in proceedings in connection with his application for a writ of error *coram nobis,* were either "contrary to" or an "unreasonable application of" "clearly established" federal law as determined by the United States Supreme Court.

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court set forth the standards for applying § 2254(d)(1). The majority emphasized that the "contrary to" and "unreasonable application of" clauses should be accorded independent meaning. *Id.* at 404, 120 S.Ct. 1495.

Justice O'Connor, writing for a majority of the Supreme Court, explained the circumstances when a state-court decision may be found to violate the "contrary to" clause:

> With respect to the first of the two statutory clauses, the Fourth Circuit held in [*Green v. French,* 143 F.3d 865 (1998), *cert. denied,* 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999),] that a state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours. . . .
>
> The word "contrary" is commonly understood to mean "diametrically differ-

the federal or state constitution requires retroactive application of that right; or

(2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

(h) A ground for relief is previously determined if a court of competent jurisdic-

tion has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

ent," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's "contrary to" clause.

On the other hand, a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause....

*Id.* at 405–06, 120 S.Ct. 1495 (citations omitted). "If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity." *Id.* at 407, 120 S.Ct. 1495.

The Supreme Court did not delineate with precision the contours of the "unreasonable application" clause. The majority stated:

For now, it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the

facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's "unreasonable application" clause.

*Id.* at 409, 120 S.Ct. 1495. The Fourth's Circuit's decision in *Green* had identified a second category of decisions that it believed would run afoul of the "unreasonable application" clause:

Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

529 U.S. at 407, 120 S.Ct. 1495 (citing *Green,* 143 F.3d at 869–70). The Supreme Court remarked that "that holding may perhaps be correct," although "the classification does have some problems of precision." *Id.* at 408. In any event, the Supreme Court recognized that it was not necessary to their decision "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)." *Id.* at 408–09.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. The Supreme Court emphasized that the test is objective, rather than subjective:

The federal habeas courts should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case. The "all reasonable jurists" stan-

dard would tend to mislead federal habeas courts by focusing their attention on a subjective inquiry rather than on an objective one.

*Id.* at 409–10, 120 S.Ct. 1495.

Moreover, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410, 120 S.Ct. 1495. Thus,

[u]nder § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 411, 120 S.Ct. 1495.

Finally, § 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States." This new provision "expressly limits the source of law to cases decided by the United States Supreme Court." *Harris v. Stovall,* 212 F.3d 940, 944 (6th Cir. 2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001). As the Sixth Circuit explained:

This provision marks a significant change from the previous language by referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.

*Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir.1998) (citing 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4261.1 (2d ed. Supp.1998)); *see also Harris,* 212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)."). Finally, in determining whether a rule is "clearly established," a habeas court is entitled to rely on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams,* 529 U.S. at 412, 120 S.Ct. 1495.

## II. *Analysis of Petitioner's Claims*

### A. *Petitioner's conviction was obtained by the action of a grand or petit jury that was unconstitutionally selected and impaneled (Claim 2)*

In his second claim for relief,[4] Petitioner contends that his conviction was obtained by the action of a grant or petit jury that was unconstitutionally selected and impaneled.[5] Although Petitioner contends that he raised this issue in his post-conviction proceeding, the opinion of the Tennessee Court of Criminal Appeals does not address it. Moreover, this is the type of claim that should be raised, in the first instance, on direct appeal, and it is, therefore, waived. Tenn.Code Ann. § 40–30–206(g); *see, e.g., Wilson v. State,* No. M2000–01237–CCA–R3–PC, 2001 WL 504910, at *1 (Tenn.Crim.App. May 14, 2001) (challenge to jury instruction which could have been raised on direct appeal is

---

4. Because the standard used for assessing Petitioner's first claim overlaps with that applicable to his third claim, the Court will first address Claim 2, then Claim 3, and, finally, Claim 1.

5. Notably, Petitioner does not explain the alleged constitutional defect in the impaneling of the grand or petit jury. Accordingly, this claim is not alleged with sufficient specificity to permit an evaluation of its merits. Notice pleading is not permitted in habeas petitions. *See Blackledge v. Allison,* 431 U.S. 63, 75–76, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

waived); *Bradfield v. State*, No. W1999–02344–CCA–R3–PC, 2001 WL 277950, at *20–*21 (Tenn.Crim.App. Mar.9, 2001) (issues concerning conduct of jury during deliberations and jury selection waived); *Gray v. State*, No. W2000–00645–CCA–R3–PC, 2001 WL 13228, at *3 (Tenn.Crim. App. Jan.5, 2001) (issue whether trial court abused its discretion in failing to declare a mistrial); *Hickman v. State*, Nos. E1999–02756–CCA–R3–PC, E2000–00626–CCA–R3–PC, 2000 WL 33157229, at *4 (Tenn. Crim.App. Sep.27, 2000) (claim that sentence is excessive). Accordingly, this claim is subject to a procedural default.

▮ Even if that were not the case, Petitioner is not entitled to relief on this claim. By pleading guilty, Petitioner has waived has objection to the composition of the grand or petit jury. *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

Therefore, as it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the Respondent is proper. Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. Claim 2 is DISMISSED.

### B. *Ineffective Assistance of Counsel (Claim 3)*

Plaintiff's third claim alleges that he received ineffective assistance of counsel. Petitioner raised this claim in his post-conviction proceeding, where he made the following arguments:

> In his claim of ineffective assistance, the appellant seeks relief upon grounds (1) failing to consult with the appellant and "sufficiently" explain "trial procedures, ... trial strategy," and defenses; (2) failing to properly investigate and interview two witnesses; and (3) failing to file a motion to suppress a video which depicted the appellant and his involvement in the drug transaction.

*Williamson v. State*, 1999 WL 1095719, at *1 (alterations in original).

The trial court conducted an evidentiary hearing on the post-conviction petition at which Petitioner and his trial counsel testified. The Tennessee Court of Criminal Appeals described the testimony elicited at that hearing:

> At the hearing the appellant testified that he plead [sic] guilty because trial counsel advised him that, if he went to trial, he would receive forty to sixty years. Additionally, the appellant related that his plea was in part based upon reliance of counsel's representation that his "parole time" would run concurrent with his pending charges. Regarding ineffective assistance, the appellant reiterated his claim that counsel did not properly investigate his case including two witnesses who would have provided him with an alibi. The appellant, however, admitted that he never provided to counsel the names of those two witnesses nor were those witnesses called to testify at the post-conviction hearing. On cross-examination, the appellant acknowledged that, at the guilty plea hearing, he advised the court, "[H]e [trial counsel] represented me real well ... [H]e did all he could." At the hearing, counsel refuted the appellant's allegations that appellant was advised that his "parole time" would run concurrently with the pending charges or that the appellant's pleas were in any way coerced. Counsel testified that no motion to suppress the videotapes was filed because there were no grounds for suppression.

*Id.* at *1 (alterations in original).

Relying on that testimony, the trial court rejected Petitioner's ineffective assistance claim on the merits:

"Petitioner fails to show counsel was not functioning as guaranteed by the Sixth and Fourteenth Amendments. [Counsel] met with Petitioner on approximately ten occasions to discuss his case. After careful review of the evidence, [counsel] in his professional judgment determined that Petitioner had no defenses due to the incriminating nature of the videotape evidence nor were there grounds for the suppression of this evidence."

*Id.* at \*2. The Tennessee Court of Criminal Appeals affirmed. *Id.* at \*2–\*3.

■ The decision of the Tennessee Court of Criminal Appeals is not an unreasonable application of clearly established federal law.[6] A claim that ineffective assistance of counsel has deprived a habeas petitioner of his Sixth Amendment right to counsel is controlled by the standards enunciated in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In order to demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052.

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. 2052 (citations omitted); *see also Coe v. Bell,* 161 F.3d 320, 342 (6th Cir.1998) ("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."), *cert. denied,* 528 U.S. 842, 120 S.Ct. 110, 145 L.Ed.2d 93 (1999) (citation omitted); *Adams v. Jago,* 703 F.2d

---

**6.** The "contrary to" clause of § 2254(d)(1) is inapplicable because the state court relied on the relevant Supreme Court precedent. *See Williamson,* 1999 WL 1095719, at \*2.

978, 981 (6th Cir.1983) ("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney' ") (citations omitted).

 A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. *See Lewis v. Alexander,* 11 F.3d 1349, 1352 (6th Cir. 1993); *Isabel v. United States,* 980 F.2d 60, 64 (1st Cir.1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *See id.* at 697, 104 S.Ct. 2052.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

*Lockhart v. Fretwell,* 506 U.S. 364, 368, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (citing *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)); *see also Strickland,* 466 U.S. at 686, 104 S.Ct. 2052 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial

process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart,* 506 U.S. at 369, 113 S.Ct. 838.

In *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the *Strickland* standard for assessing ineffective assistance claims was applicable to guilty plea challenges. As the Court explained:

> The second, or "prejudice," requirement ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.
>
> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial....

*Id.* at 59, 106 S.Ct. 366 (footnote omitted).

In this case, Petitioner plainly cannot establish prejudice. Petitioner's first argument, that counsel failed to consult with

him and explain trial procedure, is flatly contradicted by his own testimony, as well as that of his counsel, at the post-conviction hearing.[7] Moreover, Petitioner has not alleged that, if counsel had met with him more frequently or better explained trial procedures, he would have insisted on going to trial. *Hill,* 474 U.S. at 60, 106 S.Ct. 366.

The second aspect of Petitioner's ineffective assistance claim-that trial counsel failed to interview two witnesses who could have provided him with an alibi-is plainly without merit in light of Petitioner's admission, during his testimony at the post-conviction hearing, that he did not provide trial counsel with the names of those witnesses. Moreover, those purported alibi witnesses did not testify at the post-conviction hearing and this Court may not hold an evidentiary hearing to permit Petitioner the opportunity to develop what their testimony would have been because he "failed" to develop the evidentiary support for this claim in state court. 28 U.S.C. § 2254(e)(2).

■■■ The final aspect of Petitioner's ineffective assistance claim is that trial counsel failed to move to suppress the videotape evidence. However, counsel testified at the post-conviction hearing that there was no basis for a suppression motion, and Petitioner has not explained how that conclusion is incorrect.[8]

Therefore, as it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the Respondent is proper. Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. Claim 3 is DISMISSED.

### C. *Petitioner's Guilty Plea was Involuntary (Claim 1)*

In his first claim, Petitioner contends that his guilty plea was not voluntarily entered. In particular, Petitioner contends that he was new to the justice system and had no knowledge of his rights. According to Petitioner, he had intended to go to trial but his court-appointed counsel made unprofessional errors and refused to consult with him regarding his case.

Petitioner raised this issue in his post-conviction petition, where he made the following arguments:

> [T]he appellant argues that he was coerced into pleading guilty and thus his pleas were involuntary based upon (1) counsel's failure to explain the nature and consequences of the guilty pleas; (2) coercion from appellant's family after viewing the videotape of the drug transaction; and (3) reliance upon counsel's representation that his "parole time" would run concurrent with his negotiated twenty year sentence. Despite the fact that, on the date of sentencing, the appellant's prior criminal history included convictions for five felonies and three misdemeanors, he argues that his guilty

---

7. This Court is required to presume that the factual determinations made by the state court are correct unless Petitioner introduces sufficient evidence to rebut them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

8. Petitioner also contends that his trial counsel was ineffective for showing his family the videotape evidence in violation of the attorney-client privilege. This is not an appropriate basis for habeas relief because it does not

involve an alleged violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see Williamson,* 1999 WL 1095719, at *1 n. 3 ("Constitutional protections are intended as restrains against the activities of *sovereign authority* and may not be invoked by one citizen against another absent governmental participation. Because no state action is established, this claim establishes no constitutional right and is not cognizable in a post-conviction proceeding.").

pleas were involuntarily entered in that he was "ever new to the justice system and not auware [sic] of [his] rights." *Williamson,* 1999 WL 1095719, at *1 (alterations in original; footnotes omitted).

In rejecting Petitioner's claim on the merits, the trial court stated:

> "There is no merit to the Petitioner's contention that his guilty plea was not entered voluntarily and intelligently. [The trial court] diligently apprised Petitioner of his constitutional rights before accepting his guilty plea.... Petitioner then told [the trial court] that his plea was not the result of any sort of coercion ..., misunderstanding of the implications of his guilty plea, or that the plea was entered as a result of anything less than Petitioner's own free will."
>
> ....
>
> "Furthermore, Petitioner fails to show he was prejudiced. Before [the trial court] accepted the guilty plea, Petitioner recognized that he understood the ramifications of entering a guilty plea, and that no one had coerced his plea. Petitioner has completely failed his burden of proving facts which would support a finding that he would rather have gone to trial had he been otherwise advised."

*Id.* at *2. The Tennessee Court of Criminal Appeals affirmed. *Id.* at *3.

■ The decision of the Tennessee Court of Criminal Appeals is not an unreasonable application of clearly established federal law.[9] "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. at 55,

106 S.Ct. 366 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

Petitioner's first argument, that trial counsel refused to explain the nature and consequences of the guilty pleas, is without merit. As an initial matter, the Tennessee Court of Criminal Appeals has rejected as factually unfounded Petitioner's assertion that, at the time he entered his pleas, he was new to the criminal justice system.[10] Moreover, this claim is subsumed within Petitioner's ineffective assistance of counsel claim, which this Court has previously rejected on the merits. *Id.* at 56–57, 106 S.Ct. 366 ("a defendant who pleads guilty upon the advice of counsel 'may only attach the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards' " established for effective assistance) (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)).

Petitioner's second argument, that his family pressured him to plead guilty after viewing the videotape, is, as previously noted, *see supra* page 892 n. 8, not a proper subject for habeas relief because it does not involve a violation of either the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

With respect to Petitioner's third claim, that trial counsel advised him that his "parole time" would run concurrent with his negotiated twenty-year sentence, trial counsel testified at the post-conviction hearing that he did not give Petitioner that advice. *See supra* page 889. In any event, the Supreme Court's decision in *Hill v. Lockhart* makes clear that Petitioner is not entitled to relief:

---

9. The "contrary to" clause of § 2254(d)(1) is inapplicable because the state court relied on the relevant Supreme Court precedent. *See Williamson,* 1999 WL 1095719, at *3.

10. As previously noted, this Court is bound by that factual determination in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

In the present case the claimed error of counsel is erroneous advice as to eligibility for parole under the sentence agreed to in the plea bargain.... We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of "prejudice." Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

474 U.S. at 60, 106 S.Ct. 366.

Therefore, as it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the Respondent is proper. Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. Claim 1 is DISMISSED.

## D. *APPEAL ISSUES*

The Court must also determine whether to issue a certificate of appealability. The statute provides:

(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).

*Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1073 (6th Cir.1997), held that district judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. 104–132, Title I, § 102, 110 Stat. 1220 (Apr. 24, 1996). The Sixth Circuit also held that the AEDPA codifies in amended § 2253 the standard for issuing a certificate of probable cause found in prior § 2253, which was essentially a codification of *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). *See Lyons*, 105 F.3d at 1073; *see also Slack v. McDaniel*, 529 U.S. 473, 483–84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

[P]robable cause requires something more than the absence of frivolity ... and the standard for issuance of a certificate of probable cause is a higher one than the "good faith" requirement of § 1915.... [A] certificate of probable cause requires petitioner to make a substantial showing of the denial of [a] federal right. [A] question of some sub-

stance, or a substantial showing of the denial of [a] federal right, obviously [does not require] the petitioner [to] show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot*, 463 U.S. at 893, 103 S.Ct. 3383 (internal quotations and citations omitted). In this case, for the reasons discussed above, the Petitioner's claims are clearly devoid of substantive merit. The Court therefore DENIES a certificate of appealability.

Also in regards to any appeal, the United States Court of Appeals for the Sixth Circuit has held that the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915(b), does not apply to appeals of orders denying § 2254 petitions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir.1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2254 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917,[11] the petitioner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Kincade*, 117 F.3d at 952. If the motion is denied, the petitioner may renew the motion in the appellate court.

Federal Rule of Appellate Procedure 24(a) states in pertinent part:

A party to an action in a district court who desires to proceed on appeal *in forma pauperis* shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith, and to deny the certificate if the appeal would be frivolous. In this case, for the same reasons that the Court denied a certificate of appealability the Court determines that any arguments Petitioner might present on appeal to the contrary would lack even arguable merit. The Court thus determines that any appeal in this case would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. Rule App. P. 24(a), that any appeal in this matter by this Petitioner is not taken in good faith and he may not proceed on appeal *in forma pauperis*.

---

**11.** The fee for docketing an appeal is $100. *See* Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.